W. S. CROM, Appellant, v. A. C. HENDERSON, Appellee.

SPECIFIC PERFORMANCE:   Fraud—Failure of Title.   Fraud and
1   failure to furnish merchantable title as agreed will defeat a
    prayer for specific performance.

ATTACHMENT:   Truthful Statutory Ground But No Cause of Ac-
2   tion.   An attachment on the *truthful* ground that defendant is
    a nonresident is, nevertheless, *wrongful*, with resulting right
    of action on the bond, when it appears that plaintiff, by reason
    of his fraudulent conduct, neither had a cause of action nor
    reasonable cause to believe that he had such.

ATTACHMENT:   Attorney Fees Covering Defense on Merits.   De-
3   fendant in attachment may recover on the bond for attorney
    fees for presenting his *entire* defense to plaintiff's action, if
    such defense is necessary in order to·show that the attachment
    was wrongful.

*Appeal from Harrison District Court.—*J. B. ROCKAFELLOW,

Judge.

JANUARY 26, 1920.

ACTION in equity for the specific performance of a writ-
ten contract.   The action was originally brought at law,
and a writ of attachment issued.   On hearing, the court
found against the plaintiff and for the defendant upon his
counterclaims.   Plaintiff appeals.   The opinion states the
facts.—*Affirmed.*

*Cochran & Wolfe* and *Burke & Welch,* for appellant.

*Bolter & Murray* and *Roadifer & Roadifer,* for appellee.

GAYNOR, J.—Prior to the happening of the matters
hereinafter referred to, the plaintiff resided in Benton Coun-
ty, Missouri, and the defendant in Harrison County, Iowa.
In February, 1913, the plaintiff owned a farm in Benton
County, Missouri, and the defendant owned a farm in Har-

rison County, Iowa. Some arrangement was entered into
by which the plaintiff became the owner of defendant's farm,
and the defendant became the owner of plaintiff's farm. It
seems that this exchange brought no dissatisfaction to ei-
ther. That transaction is not directly involved in this suit.
Plaintiff continued to reside on his farm in Benton Coun-
ty, Missouri, and the defendant on his farm in Harrison
County, Iowa, until after the happening of the matters
involved in this suit, and each was in the occupancy of his
old farm up to the 7th day of September, 1913. About
that time, the plaintiff came to Iowa, and proposed to sell
to the defendant certain other lands then owned by him,
lying to the east of the land traded to the defendant, and
divided from it by "a road" running north and south.
Plaintiff claimed that this land of his contained 60 acres.
On September 7, 1913, they entered into a written agree-
ment for the sale and purchase of this land for the sum of
$1,200. A contract was drawn and signed, the material
parts of which are as follows:

"This agreement, made and entered into this 7th day
of September, 1913, by and between Walter S. Crom of
Benton County, state of Missouri, party of the first part,
and A. C. Henderson, of Harrison County and state of Iowa,
party of the second part, witnesseth:

"That for and in consideration of the covenants and
agreements hereinafter contained the said party of the
first part hereby agrees to sell and by these presents does
sell to the said party of the second part, the following de-
scribed premises situated in Benton County, and in the
state of Missouri, to wit: Northwest one quarter of south-
east one quarter of southwest one quarter of northeast one
quarter Section 26, Township 41, sixty acres more or less
all lying east of public highway and containing 60 acres
more or less according to the government survey, for the
sum of $1,200 to be paid at the time and manner following:

$200.00 on the execution and delivery of these presents, receipt of which is hereby acknowledged; the balance to be paid as follows: $255.00 on or before the 1st day of Dec. 1915. $200.00 on or before the 1st day of Dec. 1916. $200.00 on or before the 1st day of Dec. 1917. $200.00 on or before the 1st day of Dec. 1918. $200.00 on or before the 1st day of Dec. 1919. None of the amount above described shall draw interest until after the first day of Dec. 1913, but thereafter at the rate of six per cent.

"Party of the second part hereby agrees to purchase said premises above described and to pay therefor the sum of $1,200.00 at the times and in the manner above set forth."

There are other covenants in this contract to which we may refer later.

It will be noted that, in this contract, the governmental descriptions cover but two acres and a half; that no range is stated, nor is the county in which the land is located given. We take it, however, that both parties understood just where this land lay; that it was the land just across the "road" east of the house occupied by the plaintiff on the land theretofore traded by him to the defendant.

The original petition in this case asked to recover only the first installment provided for in the contract, but it has been so amended as to place the plaintiff in the position of asking for a specific performance of the contract. Upon plaintiff's attention's being called to the description of the land in the written evidence of the contract, an amendment was filed, praying for a reformation of the contract: that is, that the writing be reformed so as to describe the land intended by the parties to be covered by the contract. So, at this time, the plaintiff is praying for a reformation of the written evidence of the contract, and that the contract be enforced as to the land intended to be covered by the contract. We take it that these amendments were made

to meet the suggestions of this court in its opinion filed in this case on a former appeal, found in 182 Iowa 89. Plaintiff's right to have this contract reformed and specifically enforced was challenged by defendant on the ground that the land agreed to be purchased was a tract of 60 acres; that the land described in the contract, as written, covered a tract of only 2½ acres; that, after defendant moved upon the traded land in Benton County, and some time in the month of December, he discovered that this land across the road, involved in this suit, was not of the character represented by the plaintiff at the time the contract was made; that, upon discovering this, he rescinded the contract, and elected to pay the stipulated damages referred to in the contract. He further answers and says that this contract was obtained through fraud and misrepresentation in the following particulars:

(1) That the plaintiff represented the land to contain 60 acres, and that it was reasonably worth $35 an acre.

(2) That it was good pasture land, and had valuable growing timber on it; that it had no stone or rock on it; that, as soon as the timber was removed, it would be good farm land; that, at the time these representations were made, the defendant was living on his farm in Harrison County, and had no knowledge of the truth of the representations made; that he relied solely upon the statements of the plaintiff; that, in truth and in fact, the land was worth not to exceed $6.00 an acre, and was not pasture land at all; that there was no timber on the land of any value; that it was rough, covered with stone and rock, and never can be farmed; that it was covered principally with low brush, and was situated in the Ozark Mountains; that plaintiff first represented to the defendant that he owned 50 acres across the east side of the road, but later, claimed he had purchased 10 acres adjoining the 50 acres, and that the 10 acres were in cultivation, and a good, level farm;

that plaintiff resided just across the road from this land for many years, knew its exact condition, and knew that the statements and representations made by him to the defendant were false; that he made them for the purpose of procuring defendant's signature to the contract in question.

The defendant further challenges plaintiff's right, and says that the plaintiff, in the contract, agreed to furnish him a good, merchantable title, and abstract showing good and merchantable title; that he has failed to do this; that, in fact, the plaintiff did not have a good, merchantable title to the land; that the land was incumbered by mortgages which were unsatisfied, and remained unsatisfied of record at the time of the trial.

As said before, the plaintiff commenced this action at law, and, at the time of the commencement, sued out an attachment. This was on the 25th day of February, 1916. Defendant, at the time, was residing on the farm traded for in Benton County, Missouri. Under this attachment, a large sum of money was garnished and held. So the defendant, by way of counterclaim, says that the attachment was wrongfully sued out and levied; that, by the wrongful levy, this money was withheld from him to his damage, measured by the interest on the money so withheld. He bases this on the ground that there was nothing due the plaintiff at the time the attachment was sued out, and that plaintiff had no reasonable ground for believing that anything was due him.

This presents the issues upon which the cause was tried to the court.

It appears that, after the reversal of this case, the cause was transferred to equity, and tried as an equitable action, including defendant's right to recover upon the counterclaim. Upon the trial, the district court found that the plaintiff was not entitled to the relief prayed for, and

that there was nothing due him; dismissed plaintiff's petition; and allowed defendant to recover, on his counterclaim, interest on the money withheld from him under the attachment, on the ground that the attachment was wrongfully sued out, and that suit on the attachment bond by way of counterclaim could be maintained.

Other matters were urged by defendant which need not be here considered.

The court dismissed plaintiff's petition, on the ground that he was not entitled to the relief demanded, or to any relief, and allowed defendant 6 per cent interest on the money withheld under the attachment. From this, plaintiff appeals, and alleges:

(1) That the evidence did not sustain the court's finding; that the finding is in conflict with the evidence.

(2) That the court erred in finding that the contract involved in this suit was obtained through fraud and misrepresentation.

(3) That the court erred, as a matter of law, in finding that the attachment was wrongfully sued out, since it is conceded that, at the time this attachment was sued out, defendant was a nonresident.

It is the claim of the plaintiff that, in all controversies involved in this suit, the finding of the court should have been in favor of plaintiff's contention.

The first proposition involves a question of fact.

As said before, the plaintiff owned quite a large tract of land in Benton County, near the foot of the Ozark Mountains. Some time in February, 1913, he traded some of this land, which will hereafter be known as the land west of the "road," to the defendant for certain land owned by the defendant in Harrison County, Iowa. The record shows that plaintiff had lived for many years on this farm in Benton County; that he knew it well; knew the character of all the land, including this land in controversy; that defend-

ant had made but one visit, prior to September, 1913, and then only to examine the land involved in the trade, and this was in the month of February, 1913, when all the land was covered with snow, several inches deep. Defendant had no occasion to examine the land in controversy at that time, and did not examine it. He certainly never went over it with any view of purchasing it. The representations made to the defendant were made in Harrison County at defendant's home farm, and before defendant moved to Missouri. Plaintiff represented that there were 25 acres of this 60 that were under cultivation, and that the rest of it was good tie timber and saw timber land, and good for pasture; that there was only about half an acre on the hillside that was rocky. The evidence shows that none of the land was good for cultivation, and that there was no tie or saw timber on the land, and that it was not good for pasture, and that it was covered with rocks. As the plaintiff says:

"It was all rocky land,—ledge rock. There is possibly an acre and a half of it, down at the end of a little canyon or draw, that is practically good farm land. The rest is impossible to farm. The timber on it was small brush stuff, second growth; no tie timber or saw logs or anything like it; just brush."

This record discloses that this land was not worth much of anything,—not over $6.00 or $7.00 an acre.

We think the record clearly shows that the plaintiff falsely represented the character of this land to the defendant, and that defendant had no knowledge of the character of the land at the time this contract was made; that he relied upon plaintiff's representations in making the contract. The defendant was right in holding that the contract was procured by fraud, and ought not to be specifically enforced.

1. SPECIFIC PERFORMANCE: fraud: failure of title.

Plaintiff represented that he had, and so agreed to give defendant, a good, merchantable title and an abstract showing that the land was free of incumbrance. The record shows that the plaintiff did not have a good, merchantable title to the land, and that the same was incumbered, and that the incumbrance to a certain extent remained upon the land at the time of the trial, and was unsatisfied of record. The court was right in refusing specific performance for this reason, also.

It appears that defendant did not take possession of the land traded on the west side of the road until some time in December, 1913. Within 15 days after he took possession of the traded land, he examined the land in controversy, and notified the plaintiff that he would not take it; that the plaintiff had lied to him, touching the character of the land. So we have to say that, on any theory of plaintiff's contention, the finding of the district court was right, and is amply supported in the evidence. Equity will not require the specific performance of a contract obtained through fraud, nor require one to take the title to property under a contract which provides for a good, merchantable title, unless it is made fairly to appear that the title to the property which it is sought, through equitable proceedings, to force upon him, is a good, merchantable title. The showing made by the plaintiff for a specific performance of the contract so fails in its equitable features, falls so short of what equity demands, before enforcing the contract, that we have no hesitancy in saying that the court was right in dismissing plaintiff's petition for want of equity.

This brings us to a consideration of the rights of the defendant under his claims and counterclaims.

It is contended that, because defendant, at the time the attachment was sued out, was a nonresident of the state, it cannot be said that this attachment was wrongfully sued;

that this is a statutory ground for the at-

**2. ATTACHMENT: truthful statutory ground but no cause of action.** tachment. Even though this statutory ground is alleged and does exist, yet there is something more necessary to be alleged, to justify the issuance of the writ.

Section 3880 of the Code of 1897 provides:

"If the plaintiff's demand is founded on contract, the petition must state that *something is due,* and, as nearly as practicable, the amount, which must be more than five dollars in order to authorize an attachment."

An attachment against the property of a nonresident cannot rightfully issue without alleging that there is something due at the time the attachment is sought. To justify the levy, it must appear that there is something due, or reasonable ground for believing there is something due. The right to attach and hold the property of another presupposes the existence of something due, to satisfy which the defendant's property may be rightfully taken and held. To say that one can issue an attachment against the property of a nonresident, when there is nothing due the attaching party, and the attaching party has no reasonable ground for believing there is, is to say that one can wrongfully take the property of a nonresident, give a bond to protect him against the wrongful taking, and then say that the bond furnishes no protection. Before attachment is justified at all, before its issuance can be justified, and before one can justify the attaching of the property of another and withholding it from him under an attachment, it must be alleged that there is something due from the party attached, to the attaching party at the time. He is not mulcted in damages, however, if he had reasonable ground for believing that there is something due. If it affirmatively appear that the plaintiff practiced a fraud in securing the promise to pay on which he founds his right, can he rely on the promise so obtained to justify his action? The district

court affirmatively found that the obligation sued on was founded in fraud, and we affirm its finding on that proposition. We are not doing any violence to reason in saying that the plaintiff is presumed to know that he practiced the fraud which this court affirmatively finds he did practice; for *scienter* is necessary, to make actionable fraud. On such showing, the plaintiff is presumed to know, therefore, that there was nothing due him at the time, because of his fraud in procuring the promise upon which he relied to secure the writ.

The form of the bond provided by statute is that the plaintiff will pay all damages which the defendant may incur by reason of the wrongful suing out of the attachment. The attachment is wrongful if it is made to appear affirmatively that there was nothing due the plaintiff at the time the attachment was sued out, and that he had no reasonable cause for believing that there was anything due. This justifies suit upon the bond; for the statute itself provides that suit may be had on the bond if it be shown that the attachment was wrongfully sued out, and there was no reasonable cause to believe the ground upon which the same was issued to be true.

We are not unmindful of what this court said in *Ames v. Chirurg*, 152 Iowa 278, and cases therein cited, or of the reasoning upon which these cases are based. The bond contemplated is given for the purpose of protecting the defendant against the consequences that flow from the wrongful issuing of the writ, and the writ is just as wrongfully issued when there is nothing due the plaintiff at the time it is issued, as if the other necessary statutory ground for its issuance did not exist. A holding that a party against whom an attachment is issued cannot recover upon the bond, because a fact exists upon which the plaintiff may predicate a claim for an attachment, ought not, in reason or justice, to be so construed as to prevent the defendant from

recovering on the bond which was given to protect against the consequences that flow from the issuing of the attachment, simply because a statutory ground exists, and is alleged and proven, when the basic ground upon which the right to the writ rests does not exist, and he has no reasonable grounds for believing that it does exist: to wit, that he holds an obligation upon which he has a right to proceed against the defendant, and sequester his property for its satisfaction. The very fact that he has no reasonable ground for believing that he has a cause of action against the defendant meets him at the threshold of his proceeding, and challenges his right to avail himself of this drastic remedy. It may be argued, however, that his opponent has a remedy, in that he may sue for abuse of process, or for malicious prosecution, in an independent action; and it may be argued that such cause of action does not arise until the determination of the suit in which the attachment was issued, and the suit in which the process was abused. This is too narrow a construction of the statute. The terms of the bond are broken as soon as the wrongful levy is made and the wrong done. Then the right of action is complete upon the bond. It is the wrongful interference with the defendant's property, under the writ, that gives rise to the cause of action, and that cause of action arises immediately upon the wrongful interference with the property of the defendant. To hold that the defendant cannot proceed by way of counterclaim is to hold that he has no right of action upon the bond, and that the bond affords him no protection. If sent out of court, and required to proceed as for malicious prosecution or abuse of process, that suit could not be upon the bond. If an independent suit could be maintained upon the bond, then clearly the independent suit would rest upon the wrongful suing out of the attachment; and it is the wrongful suing out of the attachment, followed by the levy, that creates

the cause of action that may be pleaded by way of counter-claim upon the bond. If there is no cause of action, there is no ground for the attachment, and if there is no ground for the attachment, it follows logically that the attachment was wrongfully sued out, and, therefore, that there was a wrongful interference with defendant's property by its levy. The burden, however, is on the defendant to show this fact. Though it be made to appear that a ground for the attachment existed, yet, if it is made affirmatively to appear that the plaintiff, in suing out the attachment, has no reasonable grounds for believing that he had a right to the attachment, his action in suing out the writ cannot be justified, and it is, therefore, wrongful. The sequestration of the defendant's property, and the putting of him to expense and damage in defending against the sequestration, is the proximate result of this unjustifiable act. In fact, it occurs to the mind to be a more palpable wrong, and prompted by a baser motive, to sue out an attachment to enforce a claim which the party has no reasonable ground for believing exists, than it would be if the defendant had not been a nonresident.

While it is true that it has been held by this court, and is the law, that one can only recover those attorneys' fees which have been expended in defending against the attachment, the fact that the defense goes to the

3. ATTACHMENT: attorney fees covering defense on merits.

merits does not, of itself, defeat the right to attorneys' fees, if the defense made strikes at the very root of the right to the attachment. Where a defense is made on the counterclaim, based upon the fact that there was nothing due the plaintiff at the time the suit was brought, and that the plaintiff had no reasonable ground for believing that there was anything due, the proof of these two facts sustains the claim that the attachment was wrongfully sued out. The fact that the same proof operates both to defend

against the suit. and to prove that the attachment was wrongfully sued out, does not militate against the right of the plaintiff to recover attorneys' fees for defending against the attachment.   *Whitney & Co. v. Brownewell,* 71 Iowa 251.

We take it that *Ames v. Chirurg,* supra, is bottomed on the thought that there was no allegation or proof that the plaintiff had no reasonable grounds to believe that there was nothing due him at the time the suit was instituted. We do not pretend to harmonize what we have said here with all that is said in that case. In so far as that case is inconsistent with our holding here, it is overruled.

Upon the whole record, we think the decree of the district court is right, and it is—*Affirmed.*

WEAVER, C. J., LADD and EVANS, JJ., concur.